UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED WALKER,

     Plaintiff

-vs-

JOSEPH P. EARLY, LLC a
Domestic limited liability company,
and
JOSEPH P. EARLY, individually

     Defendants

2:19-cv-12906
Hon. Stephen J. Murphy, III

<div style="border:1px solid black; text-align:center;">

**DEFENDANTS'**

**MOTION FOR**

**SUMMARY JUDGMENT**

**FED. R. CIV. P. 56**

</div>

Defendants Joseph P. Early, LLC and Joseph P. Early, individually, bring this Motion for Summary Judgment under Fed. R. Civ. P. 56, for the reasons stated in the attached Brief.

There was a conference between attorneys on January 11, 2021 in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

## Concise Statement of Issues Presented

I.   Can Plaintiff sustain his burden of proof under the Fair Labor Standards Act ("FLSA") that he worked overtime hours for which he was not paid?

Plaintiff Says "Yes"

Defendants Say "No"

   A. Can an FLSA claim be sustained when there is no documentary evidence that a plaintiff worked overtime hours he was not paid for?

   Plaintiff Says "Yes"

   Defendants Say "No"

II.   Did Joseph P. Early, LLC maintain adequate records related to Plaintiff's hours and pay?

Plaintiff Says "No"

Defendants Say "Yes"

# Controlling Authority

Davis-Bacon and Related Acts ("DBRA")

Fair Labor Standards Act of 1938, §§7(a), 11(c), 16(b);  29 USCA §§207(a), 211(c), 216(b)

*Monroe v FTS USA, LLC*, 763 F.Supp. 2d 979 (W.D. Tenn. 2011)

*Stansbury v Faulkner*, 443 F.Supp.3d 918 (WD Tenn. 2020)


# Other Authority

*Acosta v Timberline S. LLC*, 16-cv-11522 (E.D. Mich, Oct 6, 2017)

*Anderson v Mt. Clemens Pottery Co*, 328 U.S. 680, 66 S. Ct. 1187, 90 L.Ed 1515 (1946) *superseded by statute on other grounds*, 29 U.S.C. §254(a)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

*Bean v Doug & Matthew Home Remodeling, LLC*, 14-cv-12536 (E.D. Mich Apr. 15, 2015)

*Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)

*Fulson v City of Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992)

*Horn v Digital Cable and Communications, Inc.*, 2008 WL  7137186 AT *1 (N.D. Ohio 2008)

*Myers v Copper Cellar Corp.* 192 F.3d 546, 551 (6th Cir. 1999)

*Robinson v Roberts Hotels Mgmt. Detroit, LLC*, 14-cv-13899 (E.D. Mich Jan 5, 2016)

*United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)

*White v Baptist Memorial Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012)

## Table of Contents

| | |
|---|---|
| Argument | Pg. 6 |
| Background | Pg. 6 |
| Statements of Co-Workers | Pg. 8 |
| Department of Labor Investigation | Pg. 9 |
| Record Keeping | Pg. 9 |
| Fair Labor Standards Act | Pg. 11 |
| Use of Affidavits in Court Proceedings | Pg. 15 |
| Exempt or Non-Exempt | Pg. 17 |
| Davis Bacon and Related Acts | Pg. 18 |
| Summary | Pg. 20 |

## Index of Exhibits

EXHIBIT A – Paychex Employee Earnings Record

EXHIBIT B – Statements of Co-Workers

EXHIBIT C – Walker's late reporting of claim

EXHIBIT D – Excerpts from Walker deposition

## I.   Argument

This lawsuit involves a claim by Al Walker ("Walker") that he was not paid overtime for hours he worked while employed by Joseph P. Early, LLC (herein "Early Construction"). The problem with Walker's claim is that he WAS paid for every hour of overtime during the entire span of his employment with Early Construction. Moreover, Walker personally reported his weekly hours to Joe Early (herein "Early"), the owner of Early Construction, and was paid for all hours worked for every workweek in which he worked.

Early Construction's payroll records prove that Walker was paid for all hours worked and was paid every time he worked overtime. These Employee Earnings Record reports are generated by Paychex [**EXH A**] and wholly defeat Walker's dubious claims. Additionally, Early Construction has statements from Walker's co-workers [**EXH B**] that Walker not only <u>did not work</u> more than 40 hours per week, but they were also surprised he worked even 40 hours, as many also stated that Walker was leaving the work site by 3:00 p.m. every day.

## II.   Background –

Walker began working for Early Construction on November 24, 2014 and worked until December 5, 2018.  Walker had a heart attack which prevented him from working since August 2018, but Early Construction continued to pay him through December 2018 out of compassion.

During his employment with Early Construction, Walker worked on the projects as shown in the spreadsheet attached as **EXH A1 (not highlighted) and A2 (highlighted to show the dates/job sites)**.  At all jobs, Walker, because of experience with Early, and Early's trust in Walker, was allowed to simply call in his hours rather than punch a time clock.  All other Early Construction employees punched the time clock.

It was not until after Walker retired that he first began complaining he was not paid overtime hours.  His first complaint was March 25, 2019 [**EXH C**], likely after he had seen his lawyer, and he claimed he worked 55 hours per week at the St. Rita job (which is also called "Owen" – St. Rita is the name of the building and Owen is the street).  He claimed he picked up material at Home Depot every morning.  This claim will come back to haunt Walker as Home Depot workers will testify that a female Home Depot employee met Walker before the store opened and climbed

into his vehicle.  Also, Home Depot has free delivery, and nobody needs to pick up supplies every day.  Early testified that on only rare occasions would Walker be asked to get something at Home Depot.  [**See EXH D – select pages from Walker deposition**]

Walker's 3/25/19 communication to Early was a threat, although completely fabricated.  He demanded 675 overtime hours ($59,643) within five days of the letter, or else he would report his claim to the Department of Labor.

### III.   Statements of Co-Workers –

The following co-workers and subcontractors have provided written statements refuting Walker's claims:

Ernest Owensby-Low Voltage Subcontractor states Walker would always be gone from job by 3:00 p.m.  Steven Leuder-Subcontractor-states that he worked at St. Rita and saw Walker supervising the other Early Construction employees.  From Leuder's point of view, Walker worked less than 40 hours per week. William Gifford-Early Construction states that he was an employee on many jobs, and that Walker was supervisor and never worked overtime.  Walker would always leave early.

Oswaldo Costa-Early Construction employee states Walker was supervisor and worked less than 40 hours per week.   Juan Antonio Guerra states Walker was supervisor and worked less than 40 hours per week.   Juan Pablo Guerra states that Walker was a supervisor and worked less than 40 hours per week.  Rodolfo Ochoa-Walker states that Walker was supervisor and worked less than 40 hours per week.

## IV.    Department of Labor Investigation –

In 2019, the U.S. Department of Labor/Wage and Hour Division ("DOL/WHD") investigated Walker's claims of unpaid overtime hours. After a complete investigation, DOL/WHD found that a small error in listing two employees resulted in an underpayment to those two employees of $5,695.  Those employees were immediately paid all of the back wages due.  DOL determined that Early Construction's omission was NOT a willful nor intentional act.  No other action was taken. DOL/WHD noted that "*no previous history of this employer…*" was found in their records.

## V.    Record Keeping –

It is curious Walker claims that Early Construction did not keep accurate records. [**See EXH A Employee Earnings Record, attached**].  Early Construction used Paychex, which provides full record-keeping.

Regarding record keeping, Walker has NO evidence to support his claim. That's right, NONE.  At his deposition Walker claimed that the paystubs and records of his alleged "overtime" were destroyed in a "small" house fire, which only damaged those records and some family photographs.  Despite a fire in his home, the fire department was never called, and no insurance claim was made.  No photos of the "fire" have been produced, and it is clear Walker will have no documents to produce at trial which in any way contradict Early Construction's documents. Walker can provide a few paystubs (which somehow survived the "fire") but these paystubs exactly match Early Construction's Employee Earnings Record.  Walker has no document showing he worked overtime or was underpaid.

FLSA §211(c) states:

(c) Records

> Every employer subject to any provision of this chapter or of
> any order issued under this chapter shall make, keep, and
> preserve such records of the persons employed by him and of
> the wages, hours, and other conditions and practices of
> employment maintained by him, and shall preserve such
> records for such periods of time, and shall make such reports
> therefrom to the Administrator as he shall prescribe by
> regulation or order as necessary or appropriate for the
> enforcement of the provisions of this chapter or the
> regulations or orders thereunder. The employer of an
> employee who performs substitute work described in section
> 207(p)(3) of this title may not be required under this
> subsection to keep a record of the hours of the substitute work

Here, Early Construction, using Paychex, "make[s], keep[s], and preserve[s]" payroll records for Walker which include Employee Earning Record [Deft Rule 26 Disclosure 001-017], Certified Payroll Record (US Dept. of Labor, Wage and Hour Division form) [Deft Rule 26 Disclosure 030-199], paycheck with stub (given to employee) showing earnings net pay allocation, withholdings, etc. Walker 001-058],

Statutes –

## VI.   Fair Labor Standards Act –

The Fair Labor Standards Act ("FLSA") requires that all "non-exempt" employees in the United States be paid at least the federal minimum wage for all hours worked, and be paid overtime pay at time and one-half the regular rate for all hours worked over 40 in a workweek.

Jobs which involve government pay require that all non-exempt workers be paid at the prevailing wage rate for their job category. The prevailing wage rate is established by the government, and changes periodically.  As an example, see the prevailing wage rate paid to Walker on the Lawndale job ($52.72), as compared to the St. Rita job ($58.91).   Same job classification, but the prevailing wage rate went up, and Walker was paid the higher wage when that occurred.

An employee suing an employer under FLSA for unpaid overtime compensation has the burden of proving by a preponderance of the evidence that the employee performed work for which he/she was not properly compensated.  *Myers v Copper Cellar Corp.* 192 F.3d 546, 551 (6th Cir. 1999); *See also, White v Baptist Memorial Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012).  In cases where the employee can prove the employer failed to keep adequate records, the employee may provide sufficient evidence to show the amount of work for which he/she was unpaid using "just and reasonable inference", but this lower burden is only available to the employee AFTER the employee proves that the employer did not keep adequate records.   *See, Anderson v Mt. Clemens*

*Pottery Co*, 328 U.S. 680, 66 S. Ct. 1187, 90 L.Ed 1515 (1946) *superseded by statute on other grounds*, 29 U.S.C. §254(a).

In *Monroe v FTS USA, LLC*, 63 F.Supp.2d 979 (W.D. Tenn. 2011) a court in this circuit held that to be liable under FLSA an employer must possess actual or constructive knowledge of an employee's overtime. "Where an employer had no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer' failure to pay for the overtime hours" … is not a violation of FLSA.  *Id*. At 986. Here, it was Walker himself who reported his hours weekly. Walker never complained about unpaid overtime hours until March 25, 2019, some seven months after his last date of work, and by failing to so notify his employer made any failure to pay overtime "not a violation" of FLSA.  To this date, neither Walker nor his counsel have presented any evidence supporting his claim for overtime hours.  Monroe has been cited favorably in this District in *Acosta v Timberline S. LLC*, 16-cv-11522 (E.D. Mich, Oct 6, 2017), and in *Bean v Doug & Matthew Home Remodeling, LLC*, 14-cv-12536 (E.D. Mich

Apr. 15, 2015), and *Robinson v Roberts Hotels Mgmt. Detroit, LLC*, 14-cv-13899 (E.D. Mich Jan 5, 2016).

In *Stansbury v Faulkner*, 443 F.Supp.3d 918 (WD Tenn. 2020) the court reasoned that an FLSA plaintiff has the burden of proving by a preponderance of the evidence that he/she performed work for which he/she was not properly compensated. *Stansbury* reiterated the principal that if the employer has kept adequate records, the employee may not rely on "just or reasonable" inferences to meet his/her burden under the Act.

In fact, Walker has presented demonstrative "evidence" (a chart created by Walker or his attorney captioned "Damages for Unpaid Hours), in which Walker represents that he did not get overtime hours for weeks he was actually paid overtime because he reported overtime. This chart depicts Walker as working exactly 40 regular hours and exactly 15 overtime hours for each week between 10/16/16 and 8/12/18. Exactly 15 overtime hours each and every week?  Walker's chart is flawed and inaccurate.  For example, for the week ending 10/16/16, for which a paycheck was issued 10/21/16, Walker actually worked, and was paid, 40 regular-time hours <u>and</u> 10 overtime hours, yet his chart says he was paid

no overtime at all.  This is similar to several other weeks in late 2016 when the job did require overtime, which Walker work and was paid for. But in his haste to grab money he was not entitled to Walker created this damages chart without regard to available documentary proofs.

Much like the plaintiff in *Roberts*, Walker relies on his own testimony, with no supporting documents to contradict the records kept by Early Construction, and, like *Roberts*, Walker's testimony is completely belied by the existing documentary evidence.  Also, like *Roberts*, Walker failed to complain to the employer that he had worked unpaid overtime.  In *Roberts*, the first complaint was the filing of the lawsuit; in the present case, the first complaint was the May 2019 letter just before filing. In *Roberts*, the Court found that plaintiff Roberts had created a work log (which Walker has not), but that this combined with his testimony was not enough to meet his burden of proof to come forward with credible evidence to establish that he performed work for which he was improperly compensated and did not rise to the level of producing sufficient evidence to show the amount and extent of such work.

**VII.  Use of Affidavits to Support Burden of Proof** –

This Court has broad discretion under Rule 56 to weigh the value of a self-serving affidavit presented in response to a motion for summary judgment.   Only if an affidavit is based on personal knowledge, sets out facts which would be admissible in evidence, and is presented by a declarant who is competent to testify on the matters stated will the affidavit have any value in defeating a motion.  In *Horn v Digital Cable and Communications, Inc.*, ND Ohio 2008) the court found that summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party carries the burden of proof. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, *Celotex Corp v Catrett* 477 U.S. 317, 322; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986).  The non-moving party is required to present specific facts in the record which create a genuine issue of material fact. In other words, when a motion for summary judgment is made and supported under Rule 56, the non-

moving party may not rest on his/her pleadings, allegations or denials, but must set forth specific facts showing there is a genuine issue of material fact for trial. *Fulson v City of Columbus*, 801 F.Supp. 1, 4 (SD Ohio 1992).

A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

**VIII. Exempt or Non-Exempt Status? –**

The FLSA provides an exemption from both minimum wage and overtime for bona fide executive, administrative, professional and outside sales employees. The exemptions do not apply to manual laborers or other 'blue collar' workers, including non-managerial construction workers. A construction worker who performs supervisory or managerial duties may be classified as "exempt" from wage and hour laws. Supervisory employees do not need to be paid the prevailing wage rate,

and can be salaried (i.e., not paid overtime for work beyond 40 hours/week).

Other workers at the job sites turned to Walker with questions and treated him as their supervisor [**See EXH B statements from co-workers**].   In fact, although Early believed Walker was a supervisor, Early paid Walker prevailing wage rates as a carpenter. Note that the prevailing wage rate for a carpenter is higher than a laborer, and Early provided Walker with the higher wage, even though Walker performed various in various categories from "Laborer" to the high Prevailing Wage category of "Carpenter".

Because Early thought Walker was a managerial construction worker, the Answer to the lawsuit included a claim that Walker was exempt from FLSA and prevailing wage rate requirements.   Discovery has shown that, although Walker was a "de facto" supervisor, he likely did not meet the FLSA standards for being exempt and Defendants waive that defense for purposes of this motion.   This changes nothing, as Walker was paid the correct prevailing wage rate and was paid for all overtime hours he reported.

**Davis-Bacon and Related Acts** –

The Davis-Bacon and Related Acts ("DBRA") requires payment of Prevailing Wages on each federal government contract job. In the City of Detroit, compliance with DBRA is overseen by the Detroit District Office, which frequently inspects job sites.  Contractors and subcontractors must pay laborers and mechanics employed directly upon the site of the work at least the locally prevailing wages/fringe benefits listed in the Davis-Bacon wage determination in the contract.  Those wages are published on a DOL website.

20 CFR (0-99) Section 5.5(a)(1) and 5.5(a)(3)(ii)(A) states, "the Davis-Bacon and Related Acts (DBRA) requires payment of Prevailing Wages in accordance with the applicable "Wage Determination" on each federally funded construction contract valued in excess of $2,000.00."  It is mandatory in accordance with federal statute, that the applicable Wage Determination be prominently displayed and accessible on the job site.

Further, Early Construction was also required to submit "Certified Payrolls" (§5.5(a)(3)(ii)(A)) for each respective workweek on DBRA contracts, which he faithfully complied with.  These certified payrolls also serve as "face of the record" evidence and testify to the accuracy of the

wages paid to Walker.  The Contract Work Hours and Safety Standards Act (CWHSSA) requires the payment of overtime hours to workers and mechanics on those federally funded (DBRA) projects valued in excess of $100,000, which was the case for several of the Early Construction contracts.

## Summary

Defendants ask this Court to GRANT Summary Judgment, DISMISS Plaintiff's claims, and AWARD costs and attorneys' fees to Defendants Early Construction and Joseph Early as prevailing parties in this FLSA claim.

1/12/21

*/s/ Harvey R. Weingarden (P31534)*
HARVEY R. WEINGARDEN, PLLC
7412 Tall Timbers
West Bloomfield MI 48322
(248)859-2703
HWeingardenLaw@gmail.com

HARVEY R. WEINGARDEN, PLLC
Harvey R. Weingarden (P31534)
Attorney for Defendants
7412 Tall Timbers
West Bloomfield MI 48322
248-859-2703
HWeingardenLaw@gmail.com

MORGAN & MORGAN P.A.
Warren D. Astbury (P82416)
Attorney for Plaintiff
2000 Town Center, Ste 1900
Southfield MI 48075
313-739-1952
wastbury@forthepeople.com

LIPPITT O'KEEFE, PLLC
Brian D. O'Keefe (P39603)
William M. Donovan (P12892)
Attorney for Defendants
370 E. Maple Road, Third Floor
Birmingham MI 48009
248-646-8292
bokeefe@lippittokeefe.com
wdonovan@lippittokeefe.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon all parties to the above cause to each attorney of record at their respective addresses on 1/11/2021, by:

| x US Mail | Email | X Court e-serve |
|---|---|---|
| Overnight Delivery | Certified Mail | Personally |

*/s/Harvey R. Weingarden (P31534)*
HARVEY R. WEINGARDEN, PLLC